Ernest T. SMITH, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 79A02–0408–PC–649.

Court of Appeals of Indiana.

Feb. 9, 2005.

Transfer Denied March 31, 2005.

Ernest T. Smith, Carlisle, IN, Appellant
Pro Se.

Steve Carter, Attorney General of
Indiana, Michael Gene Worden, Deputy
Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

In 1996, a jury found Ernest T. Smith guilty of Murder and Robbery, as a Class B felony, and the trial court sentenced him to a total of sixty years. Our supreme court affirmed Smith's convictions on direct appeal. *See Smith v. State*, 702 N.E.2d 668 (Ind.1998). In September 1999, Smith filed his Petition for Post–Conviction Relief. In October 1999, the post-conviction relief ("PCR") court ordered the parties to present evidence by way of affidavits under Indiana Post–Conviction Rule 1(9)(b). In July 2003, Smith filed his amended PCR petition and moved for an evidentiary hearing, and in September 2003, the PCR court issued a general denial of Smith's petition without a hearing.

Smith appealed, and this court remanded the case to the PCR court for entry of findings of fact and conclusions of law as required under Indiana Post–Conviction Rule 1(6). *See Smith v. State*, 79A02–0310–PC–898, 810 N.E.2d 782 (Ind.Ct.App. May 17, 2004). In July 2004, the PCR court entered findings and conclusions denying Smith relief. Smith now appeals and presents two issues for review:

1. Whether the PCR court erred when it did not hold an evidentiary hearing before denying Smith's petition.

2. Whether the PCR court's conclusion that Smith's trial counsel was not ineffective is clearly erroneous.

We affirm.

### FACTS AND PROCEDURAL HISTORY

Our supreme court set forth the relevant facts in *Smith*, 702 N.E.2d at 670, as follows:

At approximately 2:00 p.m. on the afternoon of April 7, 1995, defendant was in a tavern named Mom's Place in Lafayette, Indiana. Defendant had been in Mom's Place before and knew, as he told a one-time cell-mate, that the owner, Barbara "Mom" Nobile, would be alone in the tavern at that time, that she often did not pay attention while she was in the tavern, and that she kept money in a cigar box at the bar. Defendant told his previous cell-mate that Nobile "would be easy to knock off." (R. at 3882.)

J.C. Dallas Long and his son David arrived at Mom's at approximately 2:00 that afternoon. They saw both Nobile and defendant in the bar. When the

Longs left sometime between 2:30 and 3:00 p.m., defendant was still in Mom's Place. Around 3:15 or 3:20, Richard Barrett walked into Mom's Place. After a few minutes, during which time he did not see Nobile, Barrett became suspicious and looked around. He found Nobile in the utility room of the building. Her throat was slit and she had bled to death through a wound to her jugular vein. Nobile had also been stabbed on her palms, arms, chest, and back. Several hundred dollars [were] missing from the bar.

At some point during the afternoon of April 7, defendant's girlfriend saw him near her home. She observed what appeared to be blood on his pants leg between his knee and ankle. He told her that he had fallen and cut himself. Defendant was also seen later on April 7 at several bars where he spent money freely, though he had needed to borrow money the previous night. He also stayed in a hotel room that night, though he had stayed on a cousin's porch the night before.

The police arrested defendant on April 9, 1995. When photographed by police on April 12, defendant had no marks on his legs but did have scratch marks on his hands and neck. Defendant, while in jail, told his cell-mate that he and another man were drinking in Mom's Place on April 7 and that they talked of robbing and killing Nobile. Defendant also told his cell-mate that he must have blacked out and, when he awoke, he was covered in so much blood that he figured Nobile's throat had probably been cut. Defendant further confided that, if the police found his hunting knife, then he

"figured he would be screwed." (R. at 3891.) Finally, defendant admitted that he had gotten blood on his pants and went to see his girlfriend.

At trial, the State introduced DNA evidence based upon two pieces of evidence: a towel found near the rear entrance to Mom's and the shoes that defendant was wearing when arrested. Testing determined that blood was on the towel and on defendant's right tennis shoe. The State then conducted DNA testing on the towel and the shoe. The results indicated that Nobile's DNA profile was consistent with that found in the blood on the shoe. The results also indicated that defendant's DNA profile was consistent with that found in the blood on the towel.

Following conviction and sentence, Smith raised five issues on direct appeal: (1) whether the trial court erred in admitting DNA evidence; (2) whether the trial court erred in admitting evidence obtained in violation of a court order; (3) whether the trial court erred in admitting into evidence a deposition from an unavailable witness; (4) whether the State's comments during closing argument required reversal; and (5) whether the State presented insufficient evidence to sustain Smith's convictions. Our supreme court affirmed the trial court. *See id.* at 677.

Thereafter, Smith filed his pro se PCR petition alleging that his trial counsel was ineffective. The State responded to Smith's petition, and eventually, the PCR court directed the parties to submit affidavits in support of and in opposition to the petition.[1] Thereafter, Smith filed a pro se amended PCR petition, in which he, again,

---

1. The Office of the Public Defender of Indiana entered an appearance on Smith's behalf in October 1999 and filed a Verified Notice of Current Inability to Investigate seeking a stay of the proceedings. The PCR court granted that motion and ordered counsel to notify the court when Smith's case was ready for hearing. In 2001, the public defender's office filed its Notice of Substitution of Counsel, and in 2002, that office withdrew from the case.

raised the sole claim that his trial counsel was ineffective. At the same time he filed his amended petition, Smith also asked the PCR court to set a hearing date on his petition. Smith then filed his own affidavit in support of his petition, and the State submitted affidavits of Smith's three trial attorneys. Following the PCR court's general denial of Smith's petition and this court's decision remanding for entry of findings, the PCR court entered findings of fact and conclusions of law denying Smith relief. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

■■■ Defendants who have exhausted the direct appeal process may challenge the correctness of their convictions and sentences by filing a post-conviction petition. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind.2002), *cert. denied.* Post-conviction proceedings are civil proceedings, and a defendant must establish his claims by a preponderance of the evidence. *Id.* Because the defendant is now appealing from a negative judgment, to the extent his appeal turns on factual issues, he must convince this court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the PCR court. *Id.* In other words, the defendant must convince this court that there is *no* way within the law that the court below could have reached the decision it did. *Id.* (emphasis original). We do not defer to the PCR court's legal conclusions, but do accept its factual findings unless they are "clearly erroneous." *Id.*

### Issue One: Evidentiary Hearing

Smith first asserts that the PCR court erred when it failed to hold an evidentiary hearing on his petition. In particular, he claims that while the PCR court acted within its discretion to order that the case be submitted upon affidavit under Post–Conviction Rule 1(9), those affidavits presented factual issues regarding whether his trial counsel rendered ineffective assistance which required a hearing under Post–Conviction Rule 1(4)(g). The State responds that Smith has confused the two rules and that the PCR court afforded Smith with an adequate opportunity to present evidence on his petition.

Indiana Post–Conviction Rule 1(4)(g)[2] addresses summary disposition and provides:

The court may grant a motion by either party for summary disposition of the petition when it appears from the pleadings, depositions, answers to interrogatories, admissions, stipulations of fact, and any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The court may ask for oral argument on the legal issue raised. If an issue of material fact is raised, then the court shall hold an evidentiary hearing as soon as reasonably possible.

Rule 1(5), entitled "Hearing" provides:

The petition shall be heard without a jury. A record of the proceedings shall be made and preserved. All rules and statutes applicable in civil proceedings including pre-trial and discovery procedures are available to the parties, except as provided above in Section 4(b). *The court may receive affidavits, depositions, oral testimony, or other evidence and may at its discretion order the ap-*

<hr/>

**2.** Post–Conviction Rule 1(4)(f) also contains a provision that allows the PCR court to deny a petition without an evidentiary hearing where the pleadings alone show that the petitioner is entitled to no relief.

*plicant brought before it for the hearing.* The petitioner has the burden of establishing his grounds for relief by a preponderance of the evidence.

(Emphasis added). And Rule 1(9)(b) [3] provides in relevant part:

In the event petitioner elects to proceed pro se, the court at its discretion may order the cause submitted upon affidavit. It need not order the personal presence of the petitioner unless his presence is required for a full and fair determination of the issues raised at an evidentiary hearing.

That rule goes on to explain, among other things, the procedure that a pro se petitioner must follow if he wishes to subpoena witnesses at an evidentiary hearing.

This court has had few occasions to address Rule 1(9)(b). In *Fuquay v. State,* 689 N.E.2d 484, 486 (Ind.Ct.App.1997), *trans. denied,* we established that the decision to "order the cause submitted upon affidavit" is committed to the PCR court's discretion and will be reversed only when the court abuses that discretion. In that case, the petitioner claimed in his pro se PCR petition that his trial counsel was ineffective, and the PCR court granted the State's request to have the matter submitted upon affidavit under Rule 1(9)(b). The petitioner nevertheless opposed the State's motion, claimed that he was entitled to a hearing on his claim, and filed a request to subpoena his trial counsel to appear at the hearing. The petitioner never filed any affidavits, and the PCR court eventually granted the State's motion to dismiss the petition under Indiana Trial Rule 41(B). *Id.* at 485–86.

The petitioner argued in part on appeal that the PCR court should have conducted an evidentiary hearing on his petition be-

cause "his trial counsel would never 'sign an affidavit saying he was ineffective[.]' " *Id.* at 486 (citation omitted). We characterized the petitioner's argument as "speculation" and noted that he had made "no attempt to obtain information in support of his claims from any other source." *Id.* In addition, we noted that the petitioner had failed to comply with Rule 1(9)(b)'s requirements for requesting the issuance of subpoenas for witnesses because he failed to file an affidavit setting forth the substance of his trial counsel's expected testimony. We determined that because the petitioner would not have been entitled to have his trial counsel testify at a hearing, a hearing would not have aided him. Thus, we concluded that the PCR court did not abuse its discretion when it ordered the cause submitted upon affidavit.

The only other case in which we have addressed Rule 1(9)(b) is *Hamner v. State,* 739 N.E.2d 157 (Ind.Ct.App.2000). In *Hamner,* the petitioner raised two issues in his petition: (1) his guilty plea was not entered knowingly, and (2) his trial counsel was ineffective. The State filed a general denial of his petition and raised various defenses. Along with his petition, Hamner filed a motion to proceed by affidavit, which the PCR court granted. Hamner later moved to amend his petition, which the court granted. He also filed an affidavit in support of his petition, and the State responded to that affidavit with a memorandum.[4] After the State filed its memorandum, Hamner requested an evidentiary hearing to introduce testimony from his trial counsel and the deputy prosecutor who prosecuted his case. The PCR court ultimately denied him relief without a hearing. *See id.* at 158–59.

---

3.  Rule 1, Section 9 is entitled "Counsel."

4.  It does not appear that the State submitted affidavits in *Hamner.*

Hamner appealed and argued that the PCR court erred in denying his petition without a hearing. In response, the State asserted that Hamner had invited any error. In particular, the State argued, consistent with our decision in *Fuquay*, that Hamner had failed to follow the requirements for requesting the issuance of subpoenas for witnesses under Rule 1(9)(b) because he had failed to state by affidavit the reason the witnesses' testimony was required and the substance of the expected testimony. The State also claimed that because Hamner would not have been able to require his witnesses' appearance, a hearing would not have benefited him. *See id.* at 159.

Without discussing *Fuquay*, this court disagreed with the State's argument that Hamner had invited any error. Rather, the *Hamner* court reasoned:

> Hamner elected to proceed pro se and the post-conviction court, at its discretion, ordered the cause submitted by affidavit on Hamner's motion. Hamner submitted an Affidavit in Support of Petition for Post–Conviction Relief. *Hamner states that once it became clear that material facts continued to exist, he requested an evidentiary hearing on his Petition[ ]. Hamner further states that had the post-conviction court agreed that material issues of fact existed and ordered an evidentiary hearing date set, he would have then requested the issuance of subpoenas for witnesses* at the evidentiary hearing and at that time [would] specifically state by affidavit the reason the witness' testimony is required and the substance of the witness' expected testimony. [Post–Conviction Rule 1(9)(b) ] does not state when the affidavit must be submitted. The rule states what the petitioner is required to do "if the pro se petitioner requests issuance of subpoenas for witnesses at an evidentiary hearing." *It does not*

*state when a hearing will be held or under what circumstances a hearing will be held.* Thus, an evidentiary hearing could first be set and then a petitioner could submit an affidavit [in compliance with Rule 1(9)(b) ]. An evidentiary hearing was never set. Therefore, Hamner did not invite the error.

*Id.* at 159–60 (citations and internal brackets omitted, emphases added).

The *Hamner* court then addressed whether summary disposition was appropriate under Indiana Post–Conviction Rule 1(4)(f), which allows for the PCR court to deny a petition without a hearing if the "pleadings conclusively show that petitioner is entitled to no relief[.]" *Id.* at 160. As the State points out, the panel in *Hamner* did not consider the effect of any affidavits submitted under Rule 1(9)(b). Rather, looking only at the pleadings, we determined that issues of fact existed and that a hearing was required. We therefore reversed the PCR court and remanded for a hearing on Hamner's petition. *Id.* at 161.

Smith now asserts that *Hamner* controls and that the PCR court in this case should have granted his request for a hearing because the affidavits submitted pursuant to Rule 1(9)(b) create genuine issues of fact. The State responds that *Hamner* confused the two rules and erroneously applied the standards applicable to denial of a petition under Rule 1(4)(f) to a Rule 1(9)(b) situation. We must agree with the State.

The opinion in *Hamner* supports a conclusion that there is a direct relationship between summary disposition under Rules 1(4)(f) and (g) and Rule 1(9)(b). In other words, although the opinion falls short of holding as much, *Hamner* suggests that after a PCR court orders that the cause be submitted upon affidavit under Rule

1(9)(b), the "issue of fact" standard applicable to determining whether summary disposition is appropriate under Rules 1(4)(f) and (g) applies equally to Rule 1(9)(b). We disagree with *Hamner* to the extent that it conflated summary disposition and Rule 1(9)(b).

■ This court has previously clarified that Rule 1(4) "contains two subsections indicating that a court may deny a petition without a hearing[,]" namely, subsections (f) and (g). *Allen v. State,* 791 N.E.2d 748, 752 (Ind.Ct.App.2003). But it does not follow that an evidentiary hearing is necessarily required on every petition *unless* the parties meet the requirements of one of those two subsections. Rather, Rule 1(9)(b) clearly and plainly provides that when a petitioner proceeds pro se, the PCR court has the discretion to order the cause submitted upon affidavit. That rule also provides that the PCR court "need not order the personal presence of the petitioner unless his presence is required for a full and fair determination of the issues raised at an evidentiary hearing." *Id.* We read those sentences together to mean that if the PCR court orders the cause submitted by affidavit under Rule 1(9)(b), it is the court's prerogative to determine whether an evidentiary hearing is required, along with the petitioner's personal presence, to achieve a "full and fair determination of the issues raised[.]" Thus, Rule 1(9)(b) is a third and distinct way for a PCR court to rule on a petition without an evidentiary hearing.

■ We cannot accept Smith's assertion that Rule 1(4)(g) applies in this case simply because the affidavits submitted present issues of fact. Affidavits are sworn testimony and constitute "competent evidence" in post-conviction proceedings. *Gould v. State,* 578 N.E.2d 382, 384 (Ind.Ct.App.1991), *trans. denied.* Factual statements in affidavits often raise issues

of fact, and to require a full evidentiary hearing any time affidavits submitted under Rule 1(9)(b) create issues of fact would defeat the purpose of Rule 1(9)(b), which is to allow for more flexibility in both the presentation of evidence and the review of post-conviction claims where the petitioner proceeds pro se. Accordingly, where the PCR court orders the parties to proceed by affidavit under Rule 1(9)(b), the court may also determine that the petitioner's personal presence at an evidentiary hearing is required. But we hold that the decision whether to hold an evidentiary hearing for a "full and fair determination of he issues raised," like the decision to proceed by affidavit, is best left to the PCR court's discretion. Rule 1(4)(g), concerning summary disposition, has no bearing on the matter. Instead, consistent with our holding in *Fuquay,* 689 N.E.2d at 486, we will review the PCR court's decision to forego an evidentiary hearing when affidavits have been submitted under Rule 1(9)(b) under an abuse of discretion standard.

■ Turning to the facts of this case, on the same day Smith submitted his Affidavit in Support of Petition for Post–Conviction Relief, he filed a Motion to Reconsider Order, Set Hearing, and Order to Produce Petitioner in which he requested an evidentiary hearing on his petition. Our review of the Chronological Case Summary shows that the PCR court never ruled on Smith's motion. In any event, other than claiming that the affidavits he and the State submitted raised issues of fact, Smith has failed to show how an evidentiary hearing would have aided him. Rather, he has made general assertions that he was denied an opportunity to present unidentified witnesses in support of his ineffective assistance of counsel claim. If Smith believed that there were witnesses to support his claims, he could have either

submitted affidavits from those witnesses or followed the procedure set forth under Rule 1(9)(b) and requested that such witnesses be subpoenaed.[5] We therefore conclude that the PCR court did not abuse its discretion when it did not hold an evidentiary hearing on Smith's petition.

### Issue Two: Trial Counsel

We review claims of ineffective assistance of counsel under the two components set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel's performance was deficient. *Id.* at 687, 104 S.Ct. 2052. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. *See id.* at 687–88, 104 S.Ct. 2052. Second, the defendant must show that the deficient performance prejudiced him. *See id.* at 687, 104 S.Ct. 2052. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See id.* at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

■■■■■ In addition, counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption.

*Blanchard v. State*, 802 N.E.2d 14, 34 (Ind. Ct.App.2004) (citing *Saylor v. State*, 765 N.E.2d 535, 549 (Ind.2002), *sentence vacated on other grounds*, 808 N.E.2d 646 (Ind. 2004)). Consequently, isolated poor strategy or bad tactics do not necessarily amount to ineffective assistance of counsel unless, taken as a whole, the defense was inadequate. *Id.* (citing *Brown v. State*, 698 N.E.2d 1132, 1139 (Ind.1998)). Furthermore, we will not speculate as to choosing a trial strategy which, at the time and under the circumstances, seems best. *Id.* (quotations and citation omitted).

Smith claims that his trial counsel was ineffective on the following grounds: (1) counsel failed to call the victim's daughter as a witness at trial; (2) counsel failed to arrange for his attendance at a deposition, the substance of which was submitted as evidence at trial; (3) counsel failed to move to suppress the admission of a deposition; (4) counsel failed to seek enforcement of an alleged agreement regarding the exclusion of certain evidence at trial; (5) counsel failed to move to suppress Smith's statements to police; (6) counsel had a conflict of interest; (7) counsel failed to move to suppress the photo array; and (8) counsel failed to object to certain testimony.

■■■■■ However, Smith failed to cite any authority in support of four of his claims, namely, claims (3), (4), (6), and (7). Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate

---

**5.** Therein lies the danger of the decision in *Hamner*. In *Hamner*, the panel noted that there is no express time limit in Rule 1(9)(b) for a petitioner to file an affidavit setting forth the names and expected testimony of witnesses he wants to subpoena. *Hamner* allows the petitioner to request a hearing and "wait and see" before filing the required affidavits under the rule. With Smith as an example, the language in *Hamner* arguably encourages

petitioners in Rule 1(9)(b) situations to ask for a hearing without following the proper procedure for requesting the issuance of subpoenas for particular witnesses, and then argue on appeal, without ever having identified certain witnesses and their expected testimony to the PCR court, that they were denied a "full and fair determination of the issues[.]" We also disapprove of *Hamner* on those grounds.

citation to authority and portions of the record. *Diaz v. State*, 753 N.E.2d 724, 728 n. 4 (Ind.Ct.App.2001), *trans. denied; see also* Ind.App. Rule 46(A)(8)(a) (stating argument section of appellant's brief must "contain the contentions of the appellant on the issues presented, supported by cogent reasoning[ ]" and "[e]ach contention must be supported by citations to the authorities, statutes, and the appendix or parts of the Record on Appeal relied on, in accordance with Rule 22."). In addition, pro se litigants are held to the same standard regarding rule compliance as are attorneys duly admitted to the practice of law and must comply with the appellate rules to have their appeal determined on the merits. *See Gentry v. State*, 586 N.E.2d 860, 860 (Ind.Ct.App.1992). Thus, we need not address those four claims for which Smith failed to cite proper authority. We address his remaining claims in turn.[6]

[17] First, Smith maintains that his trial counsel was ineffective because he failed to call the victim's daughter, Jesslyn Jill Nobile, as a defense witness. Smith asserts that Jesslyn could have testified that approximately one week before Nobile's death, he was present at Mom's Place and helped Jesslyn remove a broken light bulb from a lamp inside the bar. Specifically, he claims that he "used a potato to remove the broken light bulb and afterwards used a towel to wipe the potato off his hands. That towel may have been thrown out back by [Jesslyn] which would explain why Smith's DNA was found on a towel." Brief of Appellant at 24.

Defense counsel Bruce Graham and Steven Knecht both testified by way of affidavit that neither had any recollection of Smith telling him about "the potato event." Appellant's App. at 79, 83. To the extent that defense counsel did not recall Smith informing them of that incident, Smith has not shown that their failure to call Jesslyn as a witness constitutes deficient performance. And regarding Smith's claim that had he been granted an evidentiary hearing, he "would have produced two (2) witnesses to prove that counsel was aware of the potato and towel incident," Smith could have either (1) submitted affidavits from those two witnesses to the PCR court, or (2) followed the procedure for subpoenaing witnesses as a pro se petitioner under Post Conviction Rule 1(9)(b). Smith did neither of those things.

Moreover, both Graham and Knecht stated that if Smith had told them about the incident, they would not have used that information at trial for tactical reasons because it placed Smith at the scene of the

---

**6.** Smith's brief contains a few citations to the trial transcript. However, no trial transcript was submitted to the PCR court, nor did Smith provide a copy of the transcript on appeal. Thus, Smith has failed to comply with Indiana Appellate Rule 22(C), which provides in relevant part that "[a]ny record material cited in an appellate brief must be reproduced in an Appendix or the Transcript or exhibits."

As the State notes, after this court remanded the matter to the PCR court for the entry of findings of fact and conclusions of law, Smith moved to have an uncertified copy of the trial transcript submitted to the PCR court. Before the State filed its response that it had no objection to an uncertified copy of the transcript being submitted, the PCR court issued its findings and conclusions denying Smith relief. The PCR court ruled on the merits of Smith's petition based solely on the affidavits. Smith then appealed without a ruling from the PCR court on his motion to submit an uncertified transcript.

Appellant bears the burden of presenting a record that is complete with respect to the issues raised on appeal. *Ford v. State*, 704 N.E.2d 457, 461 (Ind.1998). It is Smith's responsibility to provide us with any and all materials which may support his claims. The PCR court ruled on the merits of Smith's petition based solely on the affidavits, and we will review the PCR court's decision based on that same evidence.

crime one week before the murder. A decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess. *Brown v. State*, 691 N.E.2d 438, 447 (Ind.1998); *see also Wrinkles v. State*, 749 N.E.2d 1179, 1200 (Ind.2001) (stating which witnesses to call is "the epitome of a strategic decision") (citation omitted), *cert. denied.* Thus, even if Smith's counsel had been aware of the potato incident, their affidavits show that the decision not to call Jesslyn as a witness may be explained by reasonable trial strategy.

▮ Smith also asserts that his first trial counsel, Steven Meyer, was ineffective because he failed to have Smith present at the deposition of Indiana State Police Officer Kimberly Epperson, who performed DNA testing on Smith's shoe and the towel recovered from the scene. Epperson died before trial, and her deposition testimony was read into evidence. Smith now claims that Meyer was ineffective by not insuring his presence at the deposition because the use of that deposition violated his Sixth Amendment right to confront and cross-examine a witness who was presented against him.

Attorney Meyer stated in his affidavit that although he had no independent recollection of informing Smith of the deposition, it has always been his practice to notify his clients of any depositions. He also stated that he had no reason to believe that he deviated from that practice in Smith's case and that his experience with Smith was that Smith would generally defer to what Meyer thought best or necessary. Based on that evidence, Smith has failed to show that Meyer failed to inform him of Epperson's deposition.

Further, regarding Smith's constitutional claim, his reliance on *State v. Owings*, 622 N.E.2d 948 (Ind.1993), is misplaced. That opinion makes clear that where defense counsel takes a deposition and actively participates in it, a defendant is deemed to have waived his right to confrontation at trial. *Id.* at 952. Moreover, Smith's argument on this point is an attempt to take a second bite of the apple. Indeed, he unsuccessfully argued on direct appeal that the trial court abused its discretion when it admitted, over counsel's repeated objections at trial, Epperson's deposition. In particular, Smith argued that he did not have the opportunity to fully cross-examine Epperson, and our supreme court disagreed. *Smith*, 702 N.E.2d at 675–76. Thus, Smith has not met his burden of showing that the PCR court's conclusion that Meyer was not ineffective is clearly erroneous.

▮ Next, Smith contends that his defense counsel was ineffective for failing to move to suppress statements he made to police prior to his arrest. Specifically, he claims that his Fifth and Sixth Amendment rights were violated because he made statements after allegedly informing Detective Stonebraker that he had been appointed counsel in an unrelated matter and did not believe he should sign the waiver of rights form.[7]

▮ Where ineffective assistance of counsel is alleged for the failure to move to suppress or to object to the defendant's statement, we will find no deficient performance where no showing is made that any such motion or objection would have resulted in the suppression of the statement. *Shields v. State*, 699 N.E.2d 636, 640 (Ind.1998). Here, both Graham and

---

7. Smith failed to provide proper citations for these factual statements. *See* Ind.App. R. 46(A)(8)(a).

Knecht testified that they did not seek to suppress Smith's statements to police because "under Indiana law there was no basis for suppression or objection." Appellant's App. at 80, 84. The PCR court agreed.

■ As opposed to the Fifth Amendment, a defendant's Sixth Amendment right to counsel under the United States Constitution attaches upon the commencement of adversarial judicial criminal proceedings by the State. *Finney v. State*, 786 N.E.2d 764, 766 (Ind.Ct.App.2003) (citing *Kirby v. Illinois*, 406 U.S. 682, 689–90, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)). Among other things, the filing of an information charging the defendant with a crime marks the commencement of such proceedings. *Id.* Here, Smith has presented no evidence to show that the State had charged him with a crime at the time he made the statements to Detective Stonebraker. Thus, Smith has not met his burden of showing that had his counsel moved to suppress his statements on Sixth Amendment grounds, that motion would have been sustained. *See Shields*, 699 N.E.2d at 640.

Regarding Smith's Fifth Amendment claim, we first note that no part of Smith's affidavit establishes the facts relevant to determining whether a Fifth Amendment violation occurred. And Smith's entire Fifth Amendment assertion is as follows: "Once Smith told the Detectives [sic] he had counsel and did not think he should sign the waiver of rights without first talking with counsel that should have ended the interview[.] *See Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)." Brief of Appellant at 28. Even accepting Smith's factual allegations

as true, he has not shown that he unambiguously requested the presence of counsel during the interview with Detective Stonebraker. *See Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (holding suspect must unambiguously request counsel before applying rule established in *Edwards* that police questioning must cease once suspect requests counsel during interview). Again, Smith has not shown that a motion to suppress his statements would have been sustained. Therefore, his ineffective assistance of counsel claim fails.

■ Finally, Smith maintains that his counsel was ineffective for failing to object to a statement Detective Stonebraker made at trial. In particular, as the detective testified regarding his interview with Smith, he stated that he had told Smith that he believed Tammy Bender.[8] Smith claims that his counsel should have objected because such testimony violates Indiana Evidence Rule 704(b) and invaded the province of the jury. But both Graham and Knecht explained in part that they made a tactical decision not to object to the statement at trial so as not to draw unnecessary attention to it in front of the jury. Our supreme court has determined that it is a "legitimate strategy" for counsel not to object to certain evidence to avoid drawing unfavorable attention to it. *Conner v. State*, 711 N.E.2d 1238, 1250 (Ind.1999), *cert. denied.* Thus, even if Detective Stonebraker's statement were improper, Smith cannot show that his counsel was deficient for failing to object. In sum, Smith has failed to show that the PCR court's conclusion that Smith's counsel was not ineffective is clearly erroneous.[9]

8. Smith does not explain who Tammy Bender is or why that statement prejudiced him.

9. Within that same argument subheading, Smith also claims that counsel should have

objected to statements made by Cecil Johnson, but he failed to cite any authority in support of that claim. Therefore, that argu-

## CONCLUSION

We conclude that the PCR court did not abuse its discretion when, after ordering the cause submitted by affidavit under Post Conviction Rule 1(9)(b), it did not hold an evidentiary hearing on Smith's petition. We further conclude that the PCR court's denial of Smith's petition is not clearly erroneous.

Affirmed.

KIRSCH, C.J., and VAIDIK, J., concur.

ment is waived. *See Diaz,* 753 N.E.2d at 728    n. 4.