Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**R. PATRICK MAGRATH**
Alcorn Goering & Sage, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STEPHEN L. GILMORE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 40A01-1207-CR-321 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JENNINGS CIRCUIT COURT
The Honorable Jon W. Webster, Judge
Cause No. 40C01-0502-MR-42

**June 13, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Following a jury trial in Jennings Circuit Court, Stephen Gilmore ("Gilmore") was convicted of Class C felony reckless homicide. The trial court sentenced him to seven years in the Indiana Department of Correction. Gilmore now appeals and raises seven issues,[1] which we restate as:

I. Whether his second trial violated the Indiana Double Jeopardy Clause;

II. Whether the State violated Brady v. Maryland when it failed to produce its forensic pathologist for live testimony at trial;

III. Whether the trial court violated Gilmore's due process and statutory rights by not requiring the State to rebut his self-defense claim as a precondition to trial;

IV. Whether Gilmore's due process rights were violated when the State allegedly mischaracterized the evidence during *voir dire*;

V. Whether Gilmore received ineffective assistance of counsel;

VI. Whether the evidence was inappropriate to support Gilmore's conviction; and

VII. Whether Gilmore's sentence was inappropriate in light of the nature of the offense and his character.

We affirm.

**Facts and Procedural History**

Gilmore moved to Jennings County in the early 1990s and resided in a mobile home on West Private Drive, which was property owned by his stepfather Bill Akers ("Akers"). Akers and Gilmore's mother, Beverly Akers ("Beverly") divorced in 1996. Beverly received the back half of the West Private Drive property in the divorce, and she

---

[1] Gilmore has "personally dictated" the issues he would like his counsel to raise on appeal. Appellant's Br. at 15.

2

installed a mobile home next to Gilmore's mobile home, which was already located on the property. Later, Akers placed a mobile home for himself on his portion of the West Private Drive property. All of the mobile homes were served by the same water supply, with a single meter, and Akers paid the water bill for all three mobile homes.

On February 18, 2005, Gilmore was living in his mother's mobile home in order to care for her pets while she was in the hospital. Akers called Beverly's home that day to inquire about the water line the three residences shared. Gilmore told Akers he did not have the authority to discuss Akers's proposal to separate the water meters. Shortly thereafter, Akers approached Beverly's residence. Gilmore stood in the front door and showed Akers that he had a gun. Tr. p. 1661. Gilmore did not observe Akers holding a gun but said that he knew Akers was "always armed." Tr. p. 1662. Gilmore claimed that Akers continued to approach the residence and when Gilmore could not shut the front door, he "figured [Akers] was coming on in[.]" Tr. p. 1663. Gilmore fired two shots, and the second shot hit Akers in his back right shoulder. Gilmore then called 911 and admitted he had shot Akers.

When Jennings County Sheriff Deputy Robert Duckworth ("Deputy Duckworth") arrived on the scene, he observed Akers face down on the ground between the porch area and sidewalk. Tr. p. 1354. Gilmore was standing next to Akers's right-hand side with a cell phone in one hand and Akers's arm in the other hand. Tr. p. 1354. Deputy Jason Bliton ("Deputy Bliton") arrived immediately after Deputy Duckworth. They ordered Gilmore to put his hands up. Tr. pp. 157-58. Deputy Bliton then took Gilmore into custody while Deputy Duckworth checked on Akers. Akers was transported to a local

3

hospital. A small caliber handgun was recovered from his pocket. Tr. p. 1407. He was then flown to University of Louisville hospital but was pronounced dead at 8:00 p.m. Dr. Barbara Weakley-Jones ("Dr. Weakley-Jones"), a forensic pathologist, conducted an autopsy the following day. She concluded that Akers died of a single gunshot wound to his neck that entered through his right back shoulder. Tr. pp. 1468, 1484.

Police officers obtained a search warrant to search Beverly's mobile home. They recovered a Ruger semi-automatic .22 rifle from inside the residence on a couch. Tr. p. 1526. They also recovered two shell casings from the scene. Gilmore subsequently admitted to shooting Akers but asserted he did it out of fear. Tr. p. 1729.

On February 23, 2005, the State charged Gilmore with murder. In Gilmore's first trial, which commenced on August 15, 2005, the jury was unable to reach a unanimous verdict, and the trial court declared a mistrial. The jury was not polled concerning the verdict. Thereafter, Gilmore was able to, and did, post a cash bond. On October 28, 2005, the trial court reset the matter for a jury trial to commence on June 12, 2006. Multiple attorneys asked to withdraw from representation of Gilmore due to breakdowns of the respective attorney-client relationships, and the trial was delayed. On September 1, 2010, the trial court issued an order finding that Gilmore was not indigent and had waived his right to counsel by his obstreperous conduct. The trial court also appointed Gilmore appellate counsel for the limited purpose of perfecting an interlocutory appeal. See Gilmore v. State, 953 N.E.2d 583, 584 (Ind. Ct. App. 2011).

On his interlocutory appeal, Gilmore argued that the trial court abused its discretion by finding that Gilmore was no longer indigent and by finding that Gilmore

4

had waived his right to counsel by his conduct. Id. at 584-85. We reversed and remanded after concluding that the trial court erred by finding that Gilmore had waived his right to counsel. Id. at 592. We held that Gilmore was entitled to a hearing in "which he should be warned that if his obstreperous behavior persists, the trial court will find that he has chosen self-representation by his own conduct." Id.

On remand, Gilmore was appointed counsel to represent him, and his second jury trial commenced on June 18, 2012. On June 25, 2012, Gilmore was convicted of Class C felony reckless homicide. On July 18, 2012, the trial court sentenced Gilmore to seven years in the Indiana Department of Correction.

Gilmore now appeals. Additional facts will be provided as necessary.

## I. Double Jeopardy

Gilmore first argues that his Indiana constitutional right against being put in jeopardy twice for the same offense was violated by a second trial. Under Article I, Section 14 of the Indiana Constitution, "No person shall be put in jeopardy twice for the same offense." However, "[a] new trial is not barred following a hung jury[,]" and "[i]t is within the trial court's discretion to determine whether the declaring of a mistrial due to a hung jury is appropriate under the circumstances of the case." Menifee v. State, 512 N.E.2d 142, 143 (Ind. 1987).

In the first trial, the jury foreman indicated that the jury could not reach a decision after over nine hours of deliberation.

THE COURT: Okay, do you believe that the jury is at an impasse in this case?

5

[Jury Foreman]: Yes sir, I do.

THE COURT: If you were to go back into the jury room and continue your deliberations, do you believe that the jury could reach a decision in this case?

[Jury Foreman]: No sir.

THE COURT: Do you believe that you speak for your fellow jurors in making that decision?

[Jury Foreman]: Yes, Your Honor.

THE COURT: Is there anyone on the jury that disagrees with [the Jury Foreman's] assessment? [Juror]?

[Juror]: Sorry, (inaudible) about him speaking for the jury. I didn't realize that he had come to tell you we were at an impasse.

THE COURT: Okay, do you believe that you are?

[Juror]: Most likely.

THE COURT: Do you think that if you were to return into the jury room and continue with your deliberations, that the jury could reach a decision in this case? And is there anything that this Court or the attorneys could do in help you arriving at a decision?

[Juror]: No.

Tr. pp. 1006-07. Thus, evidence in the record supports that the jurors were at an impasse. The trial court then found that it was a hung jury and declared a mistrial. Tr. p. 1008. Neither party asked for the jury to be polled.

Despite this evidence, Gilmore argues that the first jury "was not 'genuinely deadlocked'" and that at a subsequent hearing some seventeen months later, on February 12, 2007, he "should have been allowed to re-poll the jury[,]" because he had obtained evidence that the jurors' had reached a not guilty verdict in regard to the murder charge.

6

Appellant's Br. at 17-18. The trial court refused to admit this evidence after concluding that it would be in violation of Indiana Evidence Rule 606(b).

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. Lehman v. State, 926 N.E.2d 35, 37 (Ind. Ct. App. 2010), trans. denied (citing Iqbal v. State, 805 N.E.2d 401, 406 (Ind. Ct. App. 2004)). An abuse of discretion occurs if the trial court's decision is "clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law." Boatner v. State, 934 N.E.2d 184, 186 (Ind. Ct. App. 2010). Under Indiana Evidence Rule 606(b):

> [u]pon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify (1) to drug or alcohol use by any juror, (2) on the question of whether extraneous prejudicial information was improperly brought to the jury's attention or (3) whether any outside influence was improperly brought to bear upon any juror.

Moreover, we note that "a verdict may not be impeached by testimony of the jurors who return it." Bryant v. State, 270 Ind. 268, 278, 385 N.E.2d 415, 421 (1979). Similarly, our supreme court has long held that the right to poll the jury cannot be made available after the jury has separated, because "[i]t would be useless to exercise care in guarding the jury from extraneous influences, during the trial of a cause, if the right to poll the jury can be made available after the jury has returned a verdict, been permitted to separate, and ascertain the views of the community upon the subject." Joy v. State, 14 Ind. 139, 142 (1860).

7

Here, none of the exceptions of Rule 606(b) applies. There were no allegations of drug or alcohol use by a juror, no questions of whether extraneous prejudicial information was improperly brought before the jury, and no allegations of improper outside influence. Moreover, we note that Gilmore could have asked to poll the jury at the time the jury rendered the verdict, but he did not do so. Only after more than a year had passed did Gilmore request that the jury be polled. We agree with the Bryant court that to permit such testimony could cause there to "'be no reasonable end to litigation'" and could result in jurors being harassed by both sides of litigation. Bryant, 270 Ind. at 278, 385 N.E.2d at 422 (quoting Stinson v. State, 262 Ind. 189, 198, 313 N.E.2d 699, 704 (1974)).

Here, the jury foreman's statements and the other juror's statements at the time of the verdict clearly indicate that the jury was at an impasse after over nine hours of deliberation and that it was a hung jury. We affirm the trial court's decision to order a mistrial, and we conclude that the new trial did not violate Gilmore's right against being put in jeopardy twice for the same offense.

## II. Brady Violation

Gilmore next claims that the State "willfully withheld or prevented" the production of potentially exculpatory evidence, in violation of Brady v. Maryland, 373 U.S. 83, 87 (1963). Specifically, Gilmore asserts that the State and trial court failed to produce "live testimony" of Dr. Weakley-Jones, the forensic pathologist, and that the "original deposition testimony . . . was presented in a video format that was admittedly altered, incomprehensible or incomplete." Appellant's Br. at 19-20.

8

In Brady, the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. "To prevail on a Brady claim, a defendant must establish: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial." Minnick v. State, 698 N.E.2d 745, 755 (Ind. 1998). Under Brady, evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Bunch v. State, 964 N.E.2d 274, 297 (Ind. Ct. App. 2012), trans. denied (internal quotation marks and citations omitted). If the probability is sufficient to undermine confidence in the outcome, then it is considered a "reasonable probability." Id. However, the State will not be found to have suppressed material evidence if it was available to a defendant through the exercise of reasonable diligence. Id. (citing Conner v. State, 711 N.E.2d 1238, 1246 (Ind. 1999), cert. denied, 531 U.S. 829 (2000)).

We first note that ". . . this is not a circumstance in which the prosecutor failed entirely to disclose material and mitigating evidence[.]" Cain v. State, 955 N.E.2d 714, 718 (Ind. 2011) (citing Brady v. Maryland, 373 U.S. 83 (1963); cf. Goodner v. State, 714 N.E.2d 638, 642 (Ind.1999)). The State could not be said to have failed to disclose the evidence because Gilmore's counsel was present at both depositions of Dr. Weakley-Jones, and he had the opportunity to ask Dr. Weakley-Jones questions at these depositions. Tr. pp. 431, 1633. In addition, Gilmore was not unaware of the favorable

9

evidence at issue; indeed, he says that it is to be found in the testimony of Dr. Weakley-Jones itself. Therefore, the evidence was available to Gilmore through reasonable diligence. See Conner, 711 N.E.2d at 1246 (holding that the defendant "was not unaware" of the exculpatory evidence and that the State cannot "be found to have suppressed material information if that information was available to a defendant through the exercise of reasonable diligence").

Under these facts and circumstances, we conclude that Gilmore could have discovered the evidence at issue through the exercise of reasonable diligence and that accordingly, there was no Brady violation on this issue.

### III.  Self-Defense Claim

Gilmore next argues that the State failed "to present evidence at the initial hearing" sufficient to overcome his self-defense claim and that the subsequent jury trial was in violation of his statutory rights.  Appellant's Br. at 21-22.  He asserts that the plain language of Indiana Code section 35-33-7-1 and Indiana Code section 35-41-3-2 were intended "to confer immunity from prosecution to any person who acts in self defense" and that since he raised the issue of self-defense, "the State's failure to present evidence at the initial hearing overcoming his defense made Gilmore immune from further prosecution[.]"  Appellant's Br. at 21-22

Our supreme court in Loza v. State, 325 N.E.2d 173 (Ind. 1975), explicitly addressed this same issue as follows:

> The defendant argues, and not without certain logic, that the plain language
> of the statute indicates the legislative intent to prevent persons who
> legitimately raise a self defense issue, as was done by this defendant, from

10

being brought to trial (placed in jeopardy). This, he asserts, requires a pretrial hearing to determine the validity of the self defense claim. The Court of Appeals quite aptly observed that the conclusions necessary to the existence of a bar to prosecution as a matter of law under the statute, must arise from the same factual context as the guilt or innocence of the accused and that to require such facts to be tried preliminarily, before there may be a trial, would be to require an absurd waste of judicial resources. . . . [W]e can recognize the statute under consideration only as a legislative declaration of the public policy of the state. It neither creates a new remedy nor does it alter our procedure in any respect, and we so hold.

Loza, 263 Ind. at 129-30, 325 N.E.2d at 176. Thus, Loza established that the statute does not require the State to rebut a defendant's claim of self-defense *as a precondition* to trial. Accordingly, we conclude that the State did not have the burden to produce evidence to rebut Gilmore's self-defense claim prior to trial, and Gilmore was not immune from further prosecution because of the State's failure to do so.[2]

## IV. Prosecutorial Misconduct

Gilmore next argues that the State attempted to "indoctrinate the jury to the State's theory of the case" by "inappropriately" charactering the "evidence as showing that Akers had been shot in the back of the neck." Appellant's Br. at 22. Our examination of

---

[2] Gilmore also argues, albeit minimally, that at the preliminary hearing his due process rights were violated because the State failed to establish probable cause in support of the charge. But Gilmore does not support this assertion with cogent argument and has failed to provide any citation to the record or to the law to support this proposition. Thus, we find he has waived this argument on appeal. Smith v. State, 822 N.E.2d 193, 202-03 (Ind. Ct. App. 2005) ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."); see also Ind. R. App. P. 46(A)(8)(a). Waiver notwithstanding, we note that the State filed an Affidavit of Probable Cause and/or Motion for and Order of Detention on February 20, 2005 and that the trial court found probable cause at that time. Appellant's App. p. 31. The State also filed a probable cause affidavit on February 23, 2005, the day of the preliminary hearing. Appellant's App. p. 32. Though this probable cause was not signed by the trial court judge, the probable cause affidavit included detailed narrative reports from the investigating officers and was sufficient to establish probable cause. Id. at 32-39. Moreover, our supreme court has held that even assuming arguendo that the detention of the defendant was illegal, it "does not invalidate the conviction." Sawyer v. Clark, 576 N.E.2d 1254, 1255 (Ind. 1991).

11

the record reveals two times during *voir dire* when the issue of how Akers was shot arose.[3] The first occurrence was when the State remarked as follows:

> The shot was [sic] penetrated the back of the deceased and without getting into a great detail of the details about angles and positioning and so forth, I'll just tell you it was in the base of the skull. . . . Is there anyone on the jury who has a distress or dislike or an antipathy or a strong feeling [sic] against the use or possession of firearms?"

Tr. pp. 1170-1172. Later, a juror remarked, "I don't understand getting shot in the back of the head or, the guy wasn't coming at you or nothing, he was going away." Tr. p. 1271. The State then responded to this juror by stating:

> You understand that that may be the State's position, but in all, with all due respect, they're going to have a position as well with that. By being silent, I don't want to acknowledge that those will be the facts. I'm not saying that they wouldn't be. But do you understand that that's something that we'll have to listen for as the week progresses and you're willing to keep an open mind, I can tell?

Tr. p. 1272.

In order for a claim of prosecutorial misconduct to be preserved for our review, "the defendant must have made a timely objection to the alleged misconduct at trial[.]" Stevens v. State, 691 N.E.2d 412, 420 (Ind. 1997). "Failure to so object waives the issue." Id. Gilmore did not object to any of the above statements. Accordingly, Gilmore has failed to properly preserve this issue for appeal and has waived this argument.

Waiver notwithstanding, we disagree that the prosecutor's statements improperly indoctrinated the jurors about the facts in this case. In reviewing a claim of prosecutorial

---

[3] Gilmore has failed to provide citations to the record to support his allegations of prosecutorial misconduct. Smith v. State, 822 N.E.2d 193, 202-03 (Ind. Ct. App. 2005) ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."); see also Ind. R. App. P. 46(A)(8)(a).

12

misconduct, we consider "whether the prosecutor committed misconduct and second, whether the alleged misconduct placed the defendant in grave peril." Delarosa v. State, 938 N.E.2d 690, 696 (Ind. 2010). "The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct." Booher v. State, 773 N.E.2d 814, 817 (Ind. 2002). "We also consider whether there are repeated instances of misconduct which reflect a deliberate attempt to improperly prejudice appellant's right to a fair trial." Marshall v. State, 621 N.E.2d 308, 320 (Ind. 1993). *Voir dire* cannot be used to try the case before evidence has been present and cannot be used "to indoctrinate prospective jurors about the facts in the case." Steelman v. State, 602 N.E.2d 152, 158 (Ind. Ct. App. 1992). However, *voir dire* is properly used to question jurors about their attitudes regarding the offense charged and "about a defense the defendant intends to use." Id.

Here, the State noted that the victim was shot in the back as a part of its questions discerning whether any jurors had issues with graphic or gruesome evidence and whether the jurors had preconceived notions regarding the use of firearms. Tr. pp. 1169-1172. Gilmore argues that this was a mischaracterization of the evidence, because it implied that Akers had been shot in the back of the neck. However, the State actually said the bullet had penetrated Akers's back and entered the base of his skull. This was not a mischaracterization of the evidence because it was consistent with Dr. Weekly-Jones's subsequent testimony. Tr. pp. 1468, 1484. In addition, when the juror commented that he did not understand a victim "getting shot in the back of the head" when walking away,

13

the State responded by noting that it did "[not] want to acknowledge that those will be the facts" and ensured that the juror was "willing to keep an open mind[.]" Tr. pp. 1271-72.

Thus, the State clearly and successfully sought to avoid any misconduct regarding its theory of the case during *voir dire*. The State's comments were directed at discerning attitudes regarding the offense charged and at probing a juror concerning preconceived ideas, both of which are permissible during *voir dire*. Steelman, 602 N.E.2d at 158. For all these reasons, we conclude that the State did not commit prosecutorial conduct.

## V. Ineffective Assistance of Counsel

Gilmore next argues that his trial counsel was ineffective because counsel (1) "withdrew a bond reduction and ignored a fast and speedy request[,]" (2) failed to poll the jury and failed to object to the trial court's declaration of a mistrial, (3) failed to object to "the State's improper statements during jury selection[,]" (4) "failed to pursue the presentation of the live testimony of Dr. Weakly-Jones" and failed to preserve the deposition testimony of Dr. Weakley-Jones, and (5) failed to "request that the Court find each of the trial counsel who represented Gilmore ineffective for their individual failures to recognize, investigate and pursue the abuse of process Gilmore perceives was perpetrated upon him throughout the course of both trials[.]" Appellant's Br. at 23-24. Gilmore also argues that "each of the judicial officers involved, including the trial judge, the prosecuting attorneys and the defense counsel engaged in obstruction of justice, conspiracy to obstruct justice and violation of the Federal 'color of law' principals [sic] by allowing charges to be filed, a trial to be conducted and a jury verdict to be suppressed after Gilmore's assertion and subsequent proof of self defense." Id. at 24.

14

In reviewing claims of ineffective assistance of counsel, we apply a two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Defendant bears the burden of proving that counsel's performance "fell below an objective standard of reasonableness based on prevailing professional norms, and that the deficient performance resulted in prejudice." Grinstead v. State, 845 N.E.2d 1027, 1031 (Ind. 2006). There is a strong presumption that counsel's representation was adequate. State v. McManus, 868 N.E.2d 778, 790 (Ind. 2007). "Prejudice occurs when the defendant demonstrates that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Grinstead, 845 N.E.2d at 1031 (quoting Strickland, 466 U.S. at 694). "'Isolated poor strategy, bad tactics, a mistake, carelessness or inexperience do not necessarily amount to ineffective counsel unless, taken as a whole, the defense was inadequate.'" Woods v. State, 701 N.E.2d 1208, 1211 (Ind. 1998) (quoting Davis v. State, 675 N.E.2d 1097, 1100 (Ind. 1996)).

Though Gilmore raises several different allegations of ineffective assistance of counsel he fails to cite to the record and fails to adequately cite authority in support of these allegations. See Smith, 822 N.E.2d at 202-03 ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."); see also Ind. R. App. P. 46(A)(8)(a). Accordingly, we find that he has waived his argument of ineffective assistance of counsel on appeal. Waiver notwithstanding, we conclude that Gilmore has failed to establish any of his claims of ineffective assistance of counsel, as follows.

A. *Requests for Bond Reduction and for a Fast and Speedy Trial*

15

Regarding Gilmore's assertion that his counsel ignored his requests for bond reduction and for speedy trial, Gilmore has failed to provide any evidentiary support for these claims; they were simply tactical decisions of counsel. See Williams v. State, 733 N.E.2d 919, 926 (Ind. 2000) ("Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord that decision deference."). Moreover, there is no evidence in the record to support Gilmore's claim that he was not able to "substantially" participate in his defense while he was incarcerated and before he posted bond.

B. *Failure to Poll the Jury*

Gilmore claims counsel was ineffective, because counsel failed to poll the jury and failed to object to the trial court's declaration of a mistrial. However, in the absence of other factors, not alleged here, counsel's failure to poll the jury does not amount to ineffective assistance of counsel. See Adams v. State, 575 N.E.2d 625, 629 (Ind. 1991) (holding that there was no reversible error when one of the claims of ineffective assistance of counsel was failure to poll the jury).

C. *Statements during Voir Dire*

Gilmore's also alleged that counsel failed to object to "the State's improper statements during jury selection[.]" However, we concluded in Section IV of this opinion that these statements by the prosecutor were not improper. Therefore, counsel could not be considered ineffective for failing to object to the statements, and Gilmore was not prejudiced.

D. *Testimony of Dr. Weakley-Jones*

Gilmore alleges his counsel was ineffective by failing to pursue the live deposition testimony of Dr. Weakley-Jones and by failing to preserve and present exculpatory testimony of Dr. Weakley-Jones from the first deposition. Appellant's Br. at 24. Specifically, Gilmore asserts that Dr. Weakley-Jones's live testimony or testimony from her first deposition would have corroborated his theory that "Akers was bent over looking into the window of the residence" when shot. Appellant's Br. at 19. However, in both depositions, Dr. Weakley-Jones clearly testified that she could only verify the angle the bullet went through the body and that she could not tell definitively determine how the body or gun were positioned because she did not have enough information. Tr. pp. 448-49, 1457, 1488-89. Moreover, Gilmore's trial counsel noted in his May 18, 2012 Notice to Court Concerning Defendant's Objection to Negligent Counsel:

> Any such testimony from Dr. Weakly-Jones would have called for speculation as to the location of the defendant and alleged victim. Such speculative questions would not be permitted under the rules of evidence if objected to by the State . . . [and] therefore were not asked in the deposition.

Appellant's App. p. 785. We agree. The record reflects that Gilmore's counsel's decisions were founded in competent representation, trial strategy and tactical decision-making. See Williams, 733 N.E.2d at 926 ("Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord that decision deference.").

E. *Abuse of Process and Obstruction of Justice*

Lastly, Gilmore's argues that his counsel was ineffective for failing to recognize, investigate, and pursue what Gilmore perceives as the conspiracy to obstruct justice and abuse of process allegedly perpetrated upon him by the prosecutor and the judicial

officers involved in this case at the trial level. Specifically, Gilmore asserts that his attorneys, the judge, and defense counsel allowed "charges to be filed, a trial to be conducted, and a jury verdict to be suppressed after Gilmore's assertion and subsequent proof of self-defense." Appellant's Br. at 24. However, beyond his bald and expansive allegations, Gilmore has cited no specific evidence to support these allegations, and we find no evidence in the record supporting these allegations. Moreover, we held in Section III above that the State was not required to rebut defendant's claim of self-defense as a *precondition to trial*; therefore, counsel and the judicial officers cannot be said to have obstructed justice by allowing a trial to proceed. Gilmore has not met his burden of showing ineffective assistance of counsel in this manner.

After reviewing counsel's defense as a whole and with recognition that there is a strong presumption counsel's representation was adequate, we conclude that Gilmore failed to establish that his counsel's performance fell below an objective standard of reasonableness and failed to establish that he suffered prejudice from counsel's representation.

**VI. Sufficiency**

Gilmore next argues that there was insufficient evidence to support the verdict because "no reasonable jury could find that the State had refuted Gilmore's self defense" claim beyond a reasonable doubt. Appellant's Br. at 26. To prevail on a self-defense claim, "the defendant must show that he (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm." Rodriguez v. State, 714 N.E.2d 667, 670

18

(Ind. Ct. App. 1999). The State only had to "disprove one of the elements of self-defense beyond a reasonable doubt for the defendant's claim to fail." Jordan v. State, 656 N.E.2d 816, 817 (Ind. 1995).

We review a "challenge to the sufficiency of evidence to rebut a claim of self-defense" the same as "any sufficiency of the evidence challenge." Wilcher v. State, 771 N.E.2d 113, 116 (Ind. Ct. App. 2002). In reviewing a challenge to sufficiency of the evidence, we do not "reweigh the evidence or judge the credibility of the witnesses" rather we respect "'the jury's exclusive province to weigh conflicting evidence.'" McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005) (quoting Alkhalidi v. State, 753 N.E.2d 625, 627 (Ind. 2001)). We "consider only the probative evidence and reasonable inferences supporting the verdict" and "affirm 'if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.'" Id. (quoting Tobar v. State, 740 N.E.2d 109, 111-12 (Ind. 2000)). We will uphold a defendant's conviction "unless no reasonable person could say that the State negated the self-defense claim beyond a reasonable doubt." Wilcher, 771 N.E.2d at 116.

Here, Gilmore argues that "Gilmore's fear of 'apparent danger'" was reasonable because "Akers was armed with both a gun and a metal rod, Akers was a strong and violent man, and Akers had previously threatened Gilmore's life as a result of Akers's perception that Gilmore had instigated his divorce from Beverly." Appellant's Br. at 26. However, the record indicates that Gilmore did not observe Akers holding a gun on the day of the incident, that Gilmore fired two shots in Akers's direction, and that Akers was

shot in the back. From these facts, a reasonable jury could infer that the State had rebutted the third element of Gilmore's claim of self-defense, namely, that he did not have a reasonable fear of harm when he fired his rifle and killed Akers. See Jordan, 656 N.E.2d at 817-18 (holding that evidence that defendant was the first to display a weapon and that victim was shot in the back was sufficient to rebut self-defense claim). For all these reasons, we conclude that a "reasonable person could say that the State negated the self-defense claim beyond a reasonable doubt." Wilcher v. State, 771 N.E.2d 113, 116 (Ind. Ct. App. 2002). Under these facts and circumstances, we further conclude that there was sufficient evidence to support the verdict.[4]

## VII. Inappropriate Sentence

Finally, Gilmore contends that his sentence was inappropriate in light of the nature of the offense and his character. Under Indiana Appellate Rule 7(B), we may "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Although we may review and revise a sentence, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the

---

[4] Gilmore also argues that the evidence was insufficient to submit the case to jury. Gilmore moved for a directed verdict at the end of the State's case, which was denied. Gilmore then presented evidence and did not renew the objection later. Thus, Gilmore has waived this issue for review on appeal. See Prine v. State, 457 N.E.2d 217, 219 (Ind. 1983) (holding that the defendant had waived any error in the denial of his motion for a directed verdict when he presented evidence in his defense after his motion had been denied and never renewed his motion for a directed verdict). Moreover, in light of our conclusion that there was sufficient evidence to support the verdict, there was sufficient evidence to submit the issue to the jury.

sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We must give "deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give due consideration to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." Trainor v. State, 950 N.E.2d 352, 355-56 (Ind. Ct. App. 2011), trans. denied (quoting Stewart v. State, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007)) (internal quotation marks omitted).

When we review the appropriateness of a sentence, we consider "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." Cardwell, 895 N.E.2d at 1224. The defendant has the "burden to persuade us that the sentence imposed by the trial court is inappropriate." Shell v. State, 927 N.E.2d 413, 422 (Ind. Ct. App. 2010). Before we may revise a sentence, the defendant must "demonstrate that his sentence is inappropriate in light of *both* the nature of his offenses and his character." Williams v. State, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008) (emphasis in original).

The sentencing range for Class C felony reckless homicide is a fixed term between two and eight years, with an advisory sentence of four years. Ind. Code § 35-50-2-6. Here, the trial court sentenced Gilmore to seven years in the Indiana Department of Correction.

As to the nature of the offense, we note that Gilmore fired two shots in Akers's direction while in a relatively close proximity and that the second bullet hit Akers in the back. As to Gilmore's character, we note that Gilmore has a history of criminal behavior,

21

albeit relatively minor.  He was convicted of possession of marijuana in 1971,[5] and he was also arrested for possession of marijuana in 1980 and fraud, based on tender of an insufficient funds check, in 1982.  Johnson v. State, 837 N.E.2d 209, 218 (Ind. Ct. App. 2005) ("When evaluating the character of an offender, a trial court may consider the offender's arrest record in addition to actual convictions.").  Moreover, we find of particular significance that while Gilmore admits to shooting Akers, the trial court found, and the sentencing record supports, that Gilmore has "shown absolutely no remorse for [his] actions[,]" which resulted in the death of another person.  Tr. p. 2023.  This reflects poorly on his character.  From these facts, we cannot conclude that a seven-year sentence was inappropriate in light of the nature of the offense and Gilmore's character.

**Conclusion**

Gilmore's second trial did not violate his constitutional protection against double jeopardy, and the State did not violate Brady v. Maryland by failing to produce the live testimony of its forensic pathologist at Gilmore's second trial. The State was not required to rebut his self-defense claim as a *precondition* to trial, and the State did not mischaracterize the evidence during *voir dire*. Gilmore received effective assistance of trial counsel, and specifically, there is no evidence supporting Gilmore's claim that said counsel, the State and the trial court conspired against Gilmore. The evidence was sufficient to support Gilmore's conviction, and his sentence of seven years for Class C

---

[5] The presentence investigation report indicates that Gilmore was officially charged and convicted for Violation of Drug Act.  Appellant's App. p. 959.  However, the report further indicates that this violation was for possession of marijuana.  Id. at 960.

22

reckless homicide was not inappropriate in light of the nature of the offense and his character.

Affirmed.

BAKER, J., and MAY, J., concur.