**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 20 2012, 8:51 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**GREGG S. THEOBALD**
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**CRAIG JONES**
DCS, Tippecanoe County Office
Lafayette, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF B.B. and L.H., Minor Children, | ) ) ) ) | |
| Lo.H., Mother, | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 79A02-1111-JT-1101 |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner. | ) ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Diana J. LaViolette, Sr. Judge
Cause Nos. 79D03-1106-JT-65, 79D03-1106-JT-69

**July 20, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Lo.H. (Mother)[1] appeals the termination of her parental rights to B.B. and L.H. (collectively, "the Children"). We affirm.

## FACTS AND PROCEDURAL HISTORY

Mother and B.M.B. (Father) have two children – B.B., born March 5, 2009, and L.H., born May 31, 2010. On June 11, 2010, the Department of Child Services (DCS) received a report that Father struck Mother in the eye, causing her eye to bruise and swell. DCS observed cockroaches in the cabinet where the baby's food was kept, a dirty refrigerator with a drawer broken in a way that could injure B.B., and kitchen cabinets without safety locks. The Children were removed from the home and placed in foster care, Mother and Father admitted the Children were Children in Need of Services (CHINS), and the Children were adjudicated as such.

On July 27, as part of the CHINS parental participation decree, Mother was required to participate in visitation and court proceedings, refrain from the consumption of alcohol or controlled substances without a prescription, submit to drug screens as requested, allow home visits by service providers, obtain and maintain full time employment, and pay $39 per week in reimbursement. On November 24, the juvenile court ordered that Mother participate in a domestic violence program, participate in case management services through Area IV, participate in family preservation services, and not allow Father to reside in her home.

On March 11, 2011, the juvenile court ordered Mother and Father have no contact

---

[1] As Father does not participate in this appeal, we limit our recitation of the facts to those relevant to the termination of Mother's parental rights.

with each other. On June 22, DCS filed a petition to terminate Mother's and Father's parental rights to the Children. On September 15, the juvenile court held a hearing, and on October 27, issued an order terminating Mother and Father's rights to the Children.

## DISCUSSION AND DECISION

We review termination of parental rights with great deference. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine first whether the evidence supports the findings and second whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

"The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must subordinate the interests

3

of the parents to those of the child, however, when evaluating the circumstances surrounding

a termination. *In re K.S.,* 750 N.E.2d at 837. The right to raise one's own child should not

be terminated solely because there is a better home available for the child, *id.*, but parental

rights may be terminated when a parent is unable or unwilling to meet his or her parental

responsibilities. *Id.* at 836.

To terminate a parent-child relationship in Indiana, the State is required to allege and

prove:

> (A) that one (1) of the following is true:
>    (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.
>    (ii)   A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>    (iii)  The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
> (B)   that one (1) of the following is true:
>    (i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>    (ii)   There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>    (iii)  The child has, on two (2) separate occasions, been adjudicated a child in need of services; [and]
> (C)   that termination is in the best interests of the child; and
> (D)   that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must prove these allegations by clear and convincing

evidence. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, the court must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

Mother challenges the sufficiency of the evidence supporting the trial court's findings under subsections (B) and (C) of Section 31-35-2-4(b)(2).

1.     Reasonable Probability Conditions not Remedied

Because our legislature wrote subsection (B) in the disjunctive, a juvenile court needs to find only one of the three requirements established by clear and convincing evidence before terminating parental rights. *See L.S.*, 717 N.E.2d at 209. Here, it found a reasonable probability the conditions resulting in the children's removal and continued placement outside of Mother's care will not be remedied.

In making such a determination, a juvenile court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. It must evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *A.F. v. Marion Cnty. Office of Family & Children*, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), *trans. denied*. The juvenile court may also properly consider, as evidence of whether conditions will be remedied, the services offered to the parent by DCS and the parent's

response to those services. *Id.* A juvenile court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his or her physical, mental, and social growth are permanently impaired before terminating the parent-child relationship. *In re E.S.*, 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002).

Mother argues some of the juvenile court's findings[2] were not supported by evidence. "To the extent that the judgment is based on erroneous findings, those findings are superfluous and are not fatal to the judgment if the remaining valid findings and conclusions support the judgment." *Lasater v. Lasater*, 809 N.E.2d 380, 397 (Ind. Ct. App. 2004).

The juvenile court's uncontested findings are supported by evidence and uphold its conclusion there was a reasonable probability the conditions resulting in the children's removal and continued placement outside of Mother's care will not be remedied. In granting the petition for termination, the juvenile court focused on Mother and Father's volatile relationship, which was the reason for the children's initial removal, noting, "together they are toxic at best and hostile at worst." (App. at 15.) The juvenile court also noted Mother's

---

[2] Mother contests the following findings:

39. Father repeatedly violated the Court's orders to not reside in [M]other's residence and to have no contact with Mother.

\* \* \*

51. Despite Mother's conflict and violence with Father, and the threat to her housing, Mother remained in a relationship with Father throughout [the CHINS and termination proceedings].

52. Despite the many observations of involved parties Mother was persistently dishonest about her continuing relationship with Father.

\* \* \*

54. Mother's interactions with the [C]hildren in visits were minimal and superficial.

\* \* \*

58. Mother did not obtain employment during [the CHINS and termination proceedings].

(App. at 15-16.)

6

interaction with her children: "During visits Mother struggled with managing both children and dealing with normal parenting issues, such as fussiness, crying, [and] needs for redirection. She was short tempered with the children and the visit facilitator had to intervene continuously." (*Id*. at 16.) Finally, with regard to Mother's "habitual patterns of conduct," *In re J.T.*, 742 N.E.2d at 512, the juvenile court found Mother's rights to her first five children had been involuntarily terminated and gave specific instances in which Mother had a "tendency to be involved in abusive relationships," (App. at 16), that put her children in danger.

Based on Mother's inability to sustain a stable environment free of abuse, her lack of parenting skills despite having seven children, and her pattern of behaviors that put her children at risk, we cannot say the juvenile court erred when it concluded there was a reasonable probability the conditions that caused the children's removal would not be remedied.[3]

    2.    <u>Best Interests of the Children</u>

In determining what is in the best interests of a child, the juvenile court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In so doing, the juvenile court must subordinate the interests of the parent to those of the child.

---

[3] Mother also challenges the juvenile court's conclusion "There is a reasonable probability that continuation of the parent-child relationship poses a threat to the [C]hildren's well-being[,]" (App. at 17), pursuant to Ind. Code § 31-35-2-4(b)(2)(B)(ii). However, as Ind. Code § 31-35-2-4(b)(2)(B) requires only one of the three factors in that section be satisfied, and there was sufficient evidence to support findings pursuant to Ind. Code § 31-35-2-4(b)(2)(B)(i), we need not address Ind. Code § 31-35-2-4(b)(2)(B)(ii).

*Id.* Recommendations from the case manager and child advocate that it would be in the child's best interest to terminate the parent-child relationship, in addition to evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *In re M.M.*, 733 N.E.2d 6, 13 (Ind. Ct. App. 2000).

Mother challenges some of the juvenile court's findings regarding the Children's best interests.[4] As noted above, if the unchallenged findings and conclusions support the juvenile court's judgment, those findings claimed to be erroneous are "superfluous and are not fatal to the judgment[.]" *Lasater*, 809 N.E.2d at 397. With the exception of Mother's argument regarding Finding 59, the unchallenged findings are sufficient to prove the termination of Mother's parental rights is in the Children's best interests.

Finding 59 states: "Both CASA and DCS family manager opined that termination was in the best interests of the children." (Tr. at 16.) Mother argues:

> Without any objective studies [pertaining to the long term effects on children of losing their biological parents under a legal remedy] being relied upon, the DCS case worker's subjective recommendation that terminating parental rights is best for these very young children does not provide clear and convincing evidence to support a termination of Mother's parental rights here.

(Br. of Appellant at 26.) However, Mother does not cite case law indicating DCS is required to present objective study evidence in support of its case worker's opinion regarding termination of parental rights. Therefore, Mother's argument is waived. *See Smith v. State*,

---

[4] Mother also challenges Finding 55, "During visits Mother struggled with managing both children and dealing with normal parenting issues, such as, fussiness, crying, [and] needs for redirection. She was short tempered with the children and the visit facilitator had to intervene continuously." (App. at 16.)

8

822 N.E.2d 193, 202-03 (Ind. Ct. App. 2005) ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority."), *trans. denied*.

As the DCS case manager and the CASA opined termination was in the best interests of the Children, and there was sufficient evidence the conditions that resulted in the Children's removal would not be remedied, we cannot say the juvenile court erred when it found termination of Mother's parental rights was in the Children's best interests. *See In re M.M.*, 733 N.E.2d at 13 (recommendation of termination by DCS case worker and CASA coupled with finding conditions that resulted in child's removal would not be remedied was sufficient to terminate parental rights).

## CONCLUSION

The juvenile court did not err when it terminated Mother's parental rights because there was sufficient evidence the conditions that resulted in the Children's removal would not be remedied and termination was in the Children's best interests. Accordingly, we affirm the termination of Mother's parental rights.

Affirmed.

FRIEDLANDER, J., and BARNES, J., concur.