**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DANIELLE L. FLORA**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana
Indianapolis, Indiana

**ROBERT J. HENKE**
Deputy Attorney General
Indianapolis, Indiana

**CHRISTINA D. PACE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF PARENT-CHILD RELATIONSHIP OF J.C.G. (Minor Child), | ) ) ) ) | |
| and | ) ) | |
| L.A.M. (Mother) | ) ) | |
| Appellant, | ) ) | No. 02A03-1312-JT-466 |
| vs. | ) ) | |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT – FAMILY RELATIONS DIVISION
The Honorable Charles F. Pratt, Judge
The Honorable Lori K. Morgan, Magistrate
Cause No. 02D08-1212-JT-155

**June 12, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

L.M's ("Mother's") parental rights to J.G., one of her four children, were terminated by the Allen Superior Court – Family Relations Division. Mother appeals, arguing that the evidence was insufficient to support the trial court's termination of her parental rights.

We affirm.

**Facts and Procedural History**

Mother has four children, but only J.G., born March 12, 2010, is the subject of the instant termination proceeding.[1] On July 22, 2010, when J.G. was four months old, police called the Department of Child Services ("DCS") to take custody of J.G. after Mother was arrested on charges of battery, a Class A misdemeanor, battery by bodily waste, a Class D felony, and resisting law enforcement, a Class A misdemeanor. DCS initiated the underlying Child in Need of Services ("CHINS") proceedings and removed

---

[1] One of her children is in the custody of her first husband, the other two are in the custody of her fiancé and his aunt. J.G.'s biological father was personally served, but he stopped attending family planning meetings on December 28, 2012, and stopped visiting J.G. during the same month. He did not attend the termination hearing personally, but was represented by Attorney Timothy Stucky. J.G.'s biological father does not participate in the present appeal.

J.G., that same day, after determining the condition of Mother's home to be inappropriate. The CHINS allegations included Mother's current unemployment and unstable housing, her almost daily use of marijuana, dirty laundry throughout the house, dirty dishes in the kitchen, trash strewn throughout the yard and dog feces in the basement, as well as the allegations for which she was arrested.

On August 23, 2010, at the initial hearing, Mother admitted that she was currently unemployed; that her residence was unkempt with dirty clothing scattered throughout the house, with dirty dishes in the kitchen sink and trash scattered through the yard; that she smoked marijuana five times per week and began using marijuana at age eleven; that she engaged in a domestic dispute in front of her home, while J.G. was at the neighbor's house; that she was arrested for battery, battery by bodily waste and resisting law enforcement; that since being incarcerated on July, 22, 2010, she had been unable to provide necessary care and supervision to J.G.; that she could benefit from services she is unlikely to receive without intervention of the court; and that prior to the preliminary inquiry report, she did not have independent housing for J.G. See Ex. Vol., DCS Exs. 4 & 5. Due to Mother's admissions, the trial court adjudicated J.G. a CHINS and ordered Mother to participate in reunification services. Shortly thereafter, on September 13, 2010, Mother was convicted of battery and battery by bodily waste, and was sentenced to one year of incarceration for each count, to run concurrently, but the trial court suspended the sentences to active probation for one-and-a-half years.

3

Four months later, by the review hearing on January 24, 2011, Mother had failed to enroll in services and programs required by the disposal decree. In late January of 2011, Mother tested positive for cocaine, a violation of her probation, and on April 7, 2011 Mother was sentenced to serve one year and 183 days in county jail. After approximately one month of incarceration, Mother was released to a community corrections program and then six months of house arrest.

At the July 6, 2011 permanency hearing, the trial court found that Mother was enrolled and participating in the required services and programs, but had not completed them. The court ordered J.G. to remain in relative care with the permanency plan to remain reunification, but ordered a concurrent permanency plan of adoption and termination of paternal rights.

Four months later, on November 21, 2011, and after completing her prior sentence, Mother was charged with disorderly conduct and public intoxication, both Class B misdemeanors. By the December 12, 2011 permanency hearing, Mother had failed to maintain contact with DCS, had engaged in criminal disorderly conduct, had tested positive for synthetic marijuana and had not demonstrated an ability to benefit from services. On April 2, 2012, Mother pleaded guilty to Class B misdemeanor disorderly conduct and was sentenced to a 180-day sentence, which was suspended to probation.

At the May 14, 2012 review hearing, the trial court found that Mother was participating in required services, consistently visiting with J.G. and had not recently tested positive for illegal substances. The court maintained an interim plan of relative

4

care because Mother had not completed required services, but she was allowed overnight visitation. However, after Mother failed to appear for drug screenings and refused to cooperate with an ongoing investigation, these overnight visitation rights were later revoked.

On July 31, 2012, while still on probation for disorderly conduct, Mother, drove while intoxicated, was involved in a car accident and fled the scene. On February 1, 2013, Mother pleaded guilty to four counts of failure to stop after an accident causing injury or death, three counts as Class A misdemeanors and one count as a Class B felony; and also pleaded guilty to one count of operating a vehicle while intoxicated causing serious bodily harm, a Class D felony. She was sentenced to concurrent terms of one year incarceration for each Class A Misdemeanor; sixteen years incarceration with eight years suspended and four years probation for the Class B felony; and three years incarceration for the Class D felony.

After all of these developments in Mother's life, at the October 18, 2012 permanency hearing, the court ordered J.G. placed in licensed foster care and changed the permanency plan to adoption and termination of parental rights. At the August, 2013 termination hearing, Mother had failed to take advantage of three years of intensive services, had made her own, additional poor choices as to her personal conduct and still had no stable employment or housing. Additionally, Mother claimed "addiction to alcohol is not my issue." Tr. p. 82. Mother's latest incarceration had begun February 8, 2013. Her expected release date is January of 2017; however this release date could be as

early as July 2015 *if* Mother takes advantage of educational opportunities in prison. Guardian Ad Litem, Brian Vian, who had been appointed after the underlying 2010 battery incident, testified at the termination hearing, "I believe strongly that the Department's petition to terminate parental rights with a plan of adoption is in the best interests of [J.G.]" Tr. p. 170.

After taking the matter under advisement, on November 1, 2013, the trial court issued its order terminating Mother's parental rights. Mother now appeals this order.

## Discussion and Decision

When we review a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. In re P.P., 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), trans. denied. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. Id. Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. In re L.S., 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), trans. denied.

Here, in terminating Mother's parental rights, the trial court entered specific factual findings and conclusions. When a trial court's judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. Id. "Findings are clearly

6

erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. L.S., 717 N.E.2d at 208.

"The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." In re M.B., 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), trans. denied. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. In the Matter of Termination of the Parent Child Relationship of K.S., 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. Id. Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. Id. at 836.

Before parental rights may be involuntarily terminated in Indiana, the State is required to allege and prove, among other things:

(B) that one (1) of the following is true:
    (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
    (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child,
    (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2)(B)-(D).

The State's burden of proof for establishing these allegations in termination cases "is one of 'clear and convincing evidence.'" In re G.Y., 904 N.E.2d 1257, 1260–1261 (Ind. 2009) (quoting Ind. Code § 31–37–14–2 (2008)). Clear and convincing evidence need not establish that the continued custody of the parents is wholly inadequate for the child's very survival. Bester, 839 N.E.2d at 148. Rather, it is sufficient to show by clear and convincing evidence that the child's emotional development and physical development are put at risk by the parent's custody. Id. Finally, "if the court finds that the allegations in a petition described in section 4 of this chapter are true, the court shall terminate the parent-child relationship." Ind. Code § 31-35-2-8(a).

Indiana Code § 31-35-2-4(b)(2)(B) requires the State to establish, by clear and convincing evidence, only one of the three requirements of subsection (b)(2)(B). The trial court found both that (i) there is a reasonable probability that the conditions that resulted in the child's removal and the reasons for the placement outside the parent's home will not be remedied, and (ii) that continuation of parent/child relationship poses a threat to the well-being of the child. Appellant's App. p. 8. On appeal, Mother only argues that the DCS failed to present clear and convincing evidence that the conditions that resulted in J.G.'s removal have not been remedied and fails to challenge the trial court's finding that the continuation of parent/child relationship poses a threat to the well-being of J.G. "Generally, a party waives any issue raised on appeal where the party fails

to develop a cogent argument or provide adequate citation to authority and portions of the record." State v. Smith, 822 N.E.2d 193 202-03 (Ind. Ct. App. 2005). Accordingly, on its face, Mother's appeal fails.

Moreover, we conclude that the record supports the trial court's judgment that there is a reasonable probability that the conditions that resulted in the J.G.'s removal or the reasons for placement outside the home of the parents will not be remedied. It is true, as Mother argues, that short-term incarceration should not be the only reason for a court to terminate parental rights. See R.Y. v. Ind. Dep't of Child Servs., 904 N.E.2d 1257 (2009). However, during Mother's short-term incarceration periods, periods that included probation, community corrections and house arrest, Mother failed to benefit from any of the services she received. Despite substance abuse counseling, Mother abused cocaine, synthetic marijuana and alcohol. Furthermore, Mother refused to acknowledge her substance abuse issues. See tr. p. 82. And after all of the intensive, corrective and rehabilitative services Mother received during this period, Mother continued to show disrespect for the law and safety of others by operating a vehicle while intoxicated and fleeing the scene of the accident rather than attempting to assist those she had injured.

"Due to the permanent effect of termination, the trial court . . . must evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation of the child." In re L.S., D.S. and A.S., 717 N.E.2d 204, 209 (Ind. Ct. App. 1999), trans. denied. "When making its determination,

the trial court can reasonably consider the services offered . . . to the parent and the parent's response to those services." In re A.A.C., 682 N.E.2d 542, 544 (Ind. Ct. App. 1997). Mother has had every chance to pull her life together over the past three years, and at this point, aware of Mother's habitual substance abuse and disrespect for the law, the State must protect J.G.

Moreover, the record supports the trial court's uncontested judgment that continuation of parent/child relationship poses a threat to the well-being of J.G. In the Spring of 2012, Mother had shown enough improvement for DCS to grant her overnight visitation with J.G.; however this was short lived. Within months, Mother failed to submit to three consecutive drug screenings, and failed to cooperate with an ongoing investigation, which resulted in these overnight visits being placed on hold. Over the course of three years, Mother has tested positive for drugs, has habitually failed to provide a safe, stable home for her children and has not demonstrated any willingness to live a law-abiding life. All of this evidence supports the trial court's conclusion that continuation of the parent/child relationship poses a threat to the well being of J.G.[2]

**Conclusion**

We will reverse a termination of parental rights only upon a showing of clear error, that is, that which leave us with a definite and firm conviction that a mistake has been made. See In re L.B., 889 N.E. 326, 342 (Ind. Ct. App. 2008). We find no such error in

---

[2] Mother did not challenge the court's finding that the termination of her parental rights was in J.G.'s best interest. The evidence discussed above and the Guardian Ad Litem's recommendation that termination is in the best interest of the child is sufficient to support the court's termination of parental rights. See In re T.F., 743 N.E.2d 766, 776 (Ind. Ct. App. 2001); see also tr. p. 170.

10

this case. Accordingly, we affirm the trial court's judgment terminating Mother's parental rights to J.G.

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.