## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 16 2018, 9:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

India Lane
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Rick L. Robinson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 16, 2018

Court of Appeals Case No.
02A03-1609-PC-2031

Appeal from the Allen Superior Court

The Honorable Frances C. Gull, Judge

Trial Court Cause No.
02D04-0909-PC-83

**Pyle, Judge.**

# Case Summary

In 2008, a jury convicted Rick L. Robinson of criminal confinement, a Class C felony;[1] intimidation, a Class D felony;[2] two counts of possession of a controlled substance, a Class D felony;[3] and possession of a firearm by a serious violent felon, a Class B felony.[4] This Court affirmed Robinson's convictions on direct appeal. *See Robinson v. State*, No. 02A05-0811-CR-658 (Ind. Ct. App. April 24, 2009). Robinson filed a pro se petition for post-conviction relief, which was subsequently amended by counsel. Following a hearing, the post-conviction court denied Robinson relief.[5] Robinson appeals the denial of his petition. Concluding that none of the errors alleged by Robinson amount to ineffective assistance of trial counsel, either alone or cumulatively, we affirm the denial of Robinson's petition.

# Issue

The sole issue for our review is whether the post-conviction court erred in denying Robinson's petition.

---

[1] IND. CODE § 35-42-3-3.

[2] I.C. § 35-45-2-1.

[3] I.C. § 35-48-4-7.

[4] I.C. § 35-47-4-5.

[5] The post-conviction court granted relief on one issue and vacated one of Robinson's convictions for possession of a controlled substance. However, the court explained that Robinson's aggregate sentence remained unchanged because the sentence for the vacated conviction had been run concurrently with the sentence for another conviction.

# Facts

We set forth the facts as follows in Robinson's direct appeal:

> Robinson and Amy Pate, who first met in 2001, began dating in January of 2008. On February 7, 2008, Pate spent the night at Robinson's home on Third Street in Fort Wayne. The next morning, Robinson and Pate awoke around 6:00 a.m. and had sexual intercourse before Pate left to take her children to school. Pate returned to Robinson's home at approximately 9:30 a.m. That morning, Robinson and Pate ran some errands around town before returning to Robinson's home together around noon. Robinson and Pate then "went upstairs," "smoked a blunt," "had intercourse," and "took showers together." Tr. p. 166. As Pate and Robinson walked downstairs to leave, Pate realized that she could not find her keys.
>
> Pate described what happened next as follows:
>
>> [Pate] said, "Baby, I can't find my keys," and [Robinson] turned around and looked at me and said, "what do you mean?" And I said, "I can't find my keys." I put my hands in my coat pocket and they weren't there and he turned and said, "Bitch, I'm going to show you what happens to bitches like you that want to f*** with me." He slapped me across my face and told me to sit on his weight bench. He went outside to his van. When he came back inside, he dead[-]bolted his door with a key. He picked up a brown weight belt that he had in his living room and he told me we were going to go through the whole house and look for my keys and everywhere we didn't find my keys he was going to hit me with that belt. We started in his living room and walked through the whole downstairs. I knew when I went through the kitchen and I looked at his clock and it said 1:40 p.m. We got up the stairs, he told me to open up his bedroom door.

I did. We got in the room, he continued to hit me with the belt. I had my back to it. He wrapped the belt around my neck. He bent back over his bed. He was spitting at me, yelling things at me. I can't exactly remember what he was saying because all I could think was pray to God that I would see my kids again. When I told him I couldn't breathe, he picked me up off of my feet, put the belt around my neck. I remember things started to turn white and fade away and I felt like I was going to pass out. [Robinson] stopped. He started touching my face realizing that he had caused injury to the left side of my face. He started freaking out, asking me what I was going to say happened to me. I told him anything I could to make him feel safe so he would let me go. I told him I would tell people I fell, that I got into a fight. I convinced him I would not turn him into anyone so that he would let me out of his house.

Tr. pp. 167-68. Robinson told Pate that she would be on the front page of the newspaper if she told the police what happened to her. Robinson and Pate then walked downstairs together where they talked in his kitchen for a little bit. While in the kitchen, Pate noticed that her keys were in a plastic Kroger bag on Robinson's table. Robinson told Pate that he "knew they were there the whole time." Tr. p. 182. At approximately 3:40 p.m., Robinson allowed Pate to leave his home.

Pate waited until approximately 1:00 a.m. on February 9, 2008, a time when she knew Robinson would be asleep, to seek treatment. Pate was treated for bruises on her back, shoulder, and head, for pain in her left ear, and for facial contusions and abrasions. Dr. Andrew McCanna, Pate's treating physician, described Pate's demeanor as "pretty tearful, crying, upset and anxious." Tr. p. 263. Pate told Dr. McCanna that her boyfriend had assaulted her and that she was afraid of him. Dr. McCanna determined that Pate's injures were consistent with blunt force injury.

On Sunday, February 10, 2008, Pate visited her sister and her father at her sister's apartment. Upon observing Pate's injuries, Pate's father called the police. Fort Wayne Police Officer Doug Hart responded to Pate's father's call, recorded Pate's statement that Robinson had beat her, and photographed Pate's injuries. Later that evening, Robinson began calling Pate, describing the people who were visiting Pate's home and what they were wearing. Pate, fearing for her safety as well as that of her children and her visitors, agreed to meet Robinson at his home.

At some point after Pate arrived at Robinson's home, Robinson became afraid that the police were going to raid his home because he thought they knew Pate was there. Robinson "grabbed his gun and waved it around pacing from his window to his bed and told [Pate] to write a note" stating that she suffered injuries after falling down the stairs. Tr. p. 189. Robinson told Pate what to write word-for-word and directed her to sign and date the note. Pate complied.

Several days later, Fort Wayne Police Detective Scott Morales interviewed Pate and took additional photographs of her injuries. Detective Morales obtained a search warrant for Robinson's home based on the information provided by Pate. Upon executing the search warrant, Detective Morales recovered a large, brown weight lifting belt from Robinson's living room, a loaded silver, Smith and Wesson .357 magnum revolver,[6] two boxes of .357 magnum ammunition, a holster, and the note allegedly written by Pate stating that she fell down Robinson's

---

[6] Fort Wayne Police Department Detective Scott Morales ("Detective Morales"), who executed the search warrant at Robinson's home, testified at trial that he found the gun in a jacket that was hanging on a bedpost in Robinson's bedroom. According to Detective Morales, the jacket appeared to be a very large men's jacket, and Robinson is a very large man.

Robinson's landlord testified at trial that he owned the gun. He further testified that he believed that the gun was in Robinson's apartment because Robinson had entered the landlord's garage without the landlord's permission and removed the gun. According to the landlord, the gun was not in his possession when he went to Robinson's house to repair a broken water heater in February 2008.

stairs from Robinson's bedroom. Detective Morales also recovered an unlabeled pill bottle containing nine pills. Robinson described the pills as "methadone" and "Tylenol 3s" and admitted to Detective Morales that he knew the pills were in his bedroom. Chemical tests confirmed that the pills were methadone and Tylenol 3, both of which are scheduled drugs requiring a prescription for possession. No evidence was presented suggesting that Robinson had a prescription for either drug.

On February 22, 2008, the State charged Robinson with Class C felony battery, Class C felony criminal confinement, Class D felony intimidation, Class D felony strangulation, two counts of Class D felony possession of a controlled substance, and Class B felony possession of a firearm by a serious violent felon. Prior to trial, Robinson moved to suppress the evidence recovered from his home, claiming that the search warrant lacked probable cause. The trial court granted Robinson's motion as it related to certain bodily fluids and his cell phone, but denied the motion as it related to the other evidence recovered from Robinson's home. Robinson also moved to prevent the State from presenting the testimony of Pate's sister, Shannon Whelchel, that Robinson had made an unsolicited offer to sell her methadone, stating that he had a "doctor in his pocket." Tr. p. 278-79. The trial court denied this motion. Following trial, the jury found Robinson guilty of all charges, except for the Class C felony battery charge and the Class D felony strangulation charge. The trial court entered judgment against Robinson and sentenced him to an aggregate term of twenty-eight years.

*Robinson*, No. 02A05-0811-CR-658 at *2-6.

On direct appeal, Robinson argued that: (1) the evidence was insufficient to support his convictions because Pate's testimony was incredibly dubious; (2) the evidence was insufficient to support his possession of a controlled substance

convictions because there was insufficient evidence to prove that he knowingly or intentionally possessed the controlled substances; (3) the trial court abused its discretion in admitting evidence recovered from his home because the warrant authorizing the search of his home was not supported by probable case where the affidavit was based solely upon Pate's report of the events; (4) the trial court abused its discretion in admitting Whelchel's statements that Robinson offered to obtain methadone for her and told her that he had "a doctor in his pocket" because such statements were inadmissible pursuant to Indiana Rule of Evidence 404(b), (Trial Tr. 279);[7] and (5) the trial court "abused its discretion in allegedly denying his right to present a defense by excluding evidence that Pate had been in a disagreement with another individual during the relevant time period." *Robinson* at 13.

[3] This Court concluded that: (1) Pate's testimony was not incredibly dubious; (2) there was sufficient evidence that Robinson knowingly and intentionally possessed the Tylenol 3 and methadone, which were found in his bedroom; (3) the trial court did not abuse its discretion in admitting evidence from the search of his home because a police officer setting forth the victim's report is sufficient to justify the issuance of a warrant;[8] (4) the trial court did not abuse its discretion in admitting Whelchel's statements because they were relevant to prove Robinson's knowledge that methadone was a controlled substance, which

---

[7] We cite to the trial transcript as Trial Tr. and to the transcript of the post-conviction hearing as PCR-Tr.

[8] *See Mickens v. State*, 479 N.E.2d 520, 523 (Ind. 1985).

required a prescription by a doctor, and because Robinson had not shown prejudice as a result of Whelchel's testimony; and (5) Robinson had failed to show how the admission of the proffered testimony concerning an alleged disagreement between Pate and another individual was relevant to prove or disprove whether Robinson and Pate had been involved in a physical altercation on February 8, 2008. We further noted that any error in the exclusion of evidence that Pate had been involved in a disagreement with another individual during the relevant time period was harmless because the jury had acquitted Robinson of the Class C felony battery charge and the Class D felony strangulation charge. *See id.*

[4]     In 2009, Robinson filed a pro se petition for post-conviction relief. A public defender entered an appearance but later withdrew from the case. In 2015, Robinson retained private counsel who filed an amended petition and argued that trial counsel was ineffective because counsel had failed to: (1) argue that the detective who submitted the affidavit for probable cause in support of the search warrant omitted from the affidavit Pate's inconsistent statements and alleged drug-seeking behavior; (2) tender a constructive possession jury instruction; (3) call Larry Dickerson to testify; and (4) make an offer of proof regarding the potential defense that someone else had committed the crime. Robinson also argued that the cumulative effect of the alleged errors amounted to ineffective assistance of counsel. The post-conviction court held a two-day hearing on the petition in July 2015 and January 2016.

[5] At the hearing, when Robinson's post-conviction counsel asked trial counsel why he had not tendered a constructive possession jury instruction, trial counsel explained as follows: "I don't generally find myself tendering constructive possession instructions, that's usually coming from the State because they want an alternative to being forced to prove actual possession." (PCR-Tr. 24).

[6] In addition, Larry Dickerson testified that he had been to Robinson's house with Robinson's landlord in February 2008. According to Dickerson, the two men had gone to Robinson's house to repair a hot water heater and foam-spray a window in Robinson's bedroom, and while the two men were in Robinson's bedroom, the landlord "took off his coat and left it there." (PCR- Tr. 69). Dickerson further testified that Robinson was one-hundred pounds heavier than his landlord and could not "have got his arm in the sleeve" of his landlord's coat. (PCR-Tr. 70). In addition, Dickerson testified that he did not see a gun in the landlord's jacket pocket and he did not see the landlord leave a gun at the the house that day.

[7] Following the hearing, the post-conviction court issued a twenty-four page order that denied Robinson relief. Robinson now appeals the denial of his petition.

## Decision

[8] A defendant who has exhausted the direct appeal process may challenge the correctness of his conviction and sentence by filing a post-conviction petition. *Parish v. State,* 838 N.E.2d 495, 499 (Ind. Ct. App. 2005), *trans. denied .* Post-

conviction procedures do not provide an opportunity for a super appeal. *Id.* Rather, they create a narrow remedy for subsequent collateral challenges to convictions that must be based on grounds enumerated in the post-conviction rules. *Id.* Post-conviction proceedings are civil proceedings, and a defendant must establish his claims by a preponderance of the evidence. *Id.*

[9] In reviewing the judgment of a post-conviction court, this Court considers only the evidence and reasonable inferences supporting its judgment. *Hall v. State,* 849 N.E.2d 466, 468 (Ind. 2006). The post-conviction court is the sole judge of the evidence and the credibility of witnesses. *Id.* at 468-69. To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* at 469. Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, will the court's findings or conclusions be disturbed as being contrary to law. *Id.*

[10] Where, as here, the post-conviction judge is the same judge who conducted the original trial, such a jurist is uniquely situated to assess whether counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and whether, but for counsel's unprofessional conduct, there was a reasonable probability that the jury would have reached a different verdict. *McCullough v. State,* 973 N.E.2d 62, 75 (Ind. Ct. App. 2012), *trans. denied. See also State v. Dye,* 784 N.E.2d 469, 476 (Ind. 2003) (noting that because the judge presided at both the original trial and post-conviction hearing,

the judge was in "an exceptional position" to assess weight and credibility of factual evidence and whether defendant was deprived of a fair trial).

[11] Robinson argues that the post-conviction court erred in denying his petition because he received ineffective assistance of trial counsel. We review claims of ineffective assistance of trial counsel under the two-prong test established in *Strickland v. Washington,* 466 U.S. 668 (1984). The defendant must show that trial counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Moody v. State,* 749 N.E.2d 65, 67 (Ind. Ct. App. 2001), *trans. denied.*

[12] Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference on appeal. *Wrinkles v. State,* 749 N.E.2d 1179, 1195 (Ind. 2001), *cert. denied*. Counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption. *Smith v. State,* 822 N.E.2d 193, 202 (Ind. Ct. App. 2005), *trans. denied.* We will not speculate as to what may or may not have been advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best. *Whitener v. State,* 696 N.E.2d 40, 42 (Ind. 1998).

[13] If we can dismiss an ineffective assistance of counsel claim on the prejudice prong, we need not address whether counsel's performance was deficient.

*Helton v. State,* 907 N.E.2d 1020, 1023 (Ind. 2009). Rather, we may proceed to evaluate whether the alleged error would have led to a different result. *Ritchie v. State*, 875 N.E.2d 706, 716 (Ind. 2007). When making this evaluation, we consider the totality of the evidence, taking into account the effect of the alleged error. *Cooper v. State,* 687 N.E.2d 350, 353 (Ind. 1997). A defendant is "entitled to a fair trial, not a perfect trial." *Inman v. State,* 4 N.E.3d 190, 203 (Ind. 2014) (citation omitted).

[14] Here, Robinson first contends that he is entitled to post-conviction relief because his trial counsel was ineffective for failing to argue in his motion to suppress and at trial that a police officer had omitted information from the probable cause affidavit offered in support of the warrant to search Robinson's home. Specifically, Robinson argues that the police officer omitted information about Pate's alleged drug-seeking behavior when she went to the hospital several times in January and February 2008 and the alleged inconsistencies in her descriptions of the crime. Robinson, however, has failed to prove that his counsel rendered deficient performance by not raising these arguments and that but for this alleged error, the result of the proceeding would have been different.

[15] Specifically, in the case of an alleged omission from a probable cause affidavit, a defendant has the burden to show that: (1) the police engaged in a deliberate falsehood or reckless disregard for the truth in omitting information from the warrant application; and (2) probable cause would no longer exist if the omitted information were considered by the issuing judge. *Keelyen v. State*, 14 N.E.3d 865, 877 (Ind. Ct. App. 2014), *trans. denied*. Here, we agree with the State that

Robinson has neither argued nor met his burden of proof to show that the omission of this information was deliberate and that probable cause would have no longer existed if such omitted information had been considered by the issuing judge. Robinson has failed to meet his burden to show that but for this alleged error, the result of the proceeding would have been different. Accordingly, he cannot show the prejudice necessary to succeed on an ineffective assistance of counsel claim.

[16] Robinson next contends that trial counsel was ineffective for failing to tender a constructive possession jury instruction. To prevail on his claim, Robinson has the burden to show that counsel unreasonably failed to request a proper instruction and that Robinson was prejudiced by the failure to request the instruction. *See Potter v. State*, 684 N.E.2d 1127, 1134 (Ind. 1997). Robinson has shown neither. We further note that at the post-conviction hearing, trial counsel explained that he had made a strategic decision not to tender a constructive possession instruction. According to trial counsel, constructive possession instructions typically come "from the State because they want an alternative to being forced to prove actual possession." (PCR-Tr. 24). Counsel should be given deference in choosing a trial strategy. *See Whitener*, 696 N.E.2d at 42. Robinson has failed to meet his burden to show that trial counsel was ineffective for failing to tender a constructive possession jury instruction.

[17] Robinson also argues that trial counsel was ineffective for failing to call Larry Dickerson as a witness at trial. It appears that Robinson believes that Dickerson's testimony would have established that the gun and jacket that

Detective Morales found in Robinson's bedroom belonged to the landlord, who left it there with his gun in the pocket when he was foam-spraying the window in Robinson's bedroom. However, we agree with the State that "[t]rial counsel was not ineffective for not calling Dickerson to provide inconsequential testimony." (State's Br. 19). Specifically, Dickerson testified that he did not see a gun in the landlord's pocket or in the landlord's possession that day. He also testified that Robinson was one-hundred pounds heavier than the landlord and could not "have got his arm in the sleeve" of his landlord's coat. (PCR-Tr. 70). We agree with the State that where "Dickerson claims no knowledge about the gun, and he clearly states that the jacket left behind [by the landlord] would not have been of the same distinctly large size as the one in which the gun was found," his testimony was "arguably irrelevant . . . and certainly . . . not sufficiently probative to have altered the outcome of trial." (State's Br. at 20). Robinson has failed to meet his burden to prove that trial counsel was ineffective for failing to call Larry Dickerson as a witness at trial. *See Grinstead v. State*, 845 N.E.2d 1027, 1033 (Ind. 2006).

[18] Robinson further argues that trial counsel was "ineffective because he failed to make a proper argument and offer of proof that [Robinson] was allowed to put on a defense that someone else could have battered Ms. Pate." (Robinson's Br. 16). However, on direct appeal, this Court concluded that any error in the exclusion of evidence that Pate had been involved in a disagreement with another individual during the relevant time period was harmless because the jury acquitted Robinson of the Class C felony battery and the Class D felony

strangulation. *See Robinson*, No. 02A05-0811-CR-658 at 15. Robinson has failed to meet his burden of proving he would have been prejudiced by any such error. If we can dismiss an ineffective assistance of counsel claim on the prejudice prong, we need not address whether counsel's performance was deficient. *See Helton*, 907 N.E.2d at 1023.

[19] Robinson also contends that the cumulative effect of counsel's errors deprived him of his right to the effective assistance of counsel. However, the Indiana Supreme Court has explained that "[t]rial irregularities which standing alone do not amount to error do not gain the stature of reversible error when taken together." *Kubsch v. State*, 934 N.E.2d 1138, 1154 (Ind. 2010) (citing *Reaves v. State*, 586 N.E.2d 847, 858 (Ind. 1992)). We find no error, cumulative or otherwise.[9]

[20] Affirmed.

May, J., and Brown, J., concur.

---

[9] Robinson also argues that appellate counsel was ineffective. He has waived appellate review of this argument because his one-paragraph argument is supported neither by citation to authority nor cogent argument. *See Smith v. State*, 822 N.E.2d 193, 202-03 (Ind. Ct. App. 2005) ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), *trans. denied*.

Waiver notwithstanding, we find no error. First, the post-conviction court granted relief on one of the issues. Second, because we have determined that Robinson did not receive ineffective assistance of trial counsel he can neither show deficient performance nor resulting prejudice as a result of his appellate counsel's failure to raise these issues on appeal. *See Smith v. State*, 792 N.E.2d 940, 946 (Ind. Ct. App. 2003) ("As we find Smith's [trial] counsel was not ineffective, appellate counsel did not err in failing to raise this issue on appeal."), *trans. denied*.